THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN BARNA                              :
                                        :
              Plaintiff                 :
                                        :
      v.                                :    3:12-CV-638
                                        :    (JUDGE MARIANI)
BOARD OF SCHOOL DIRECTORS               :
OF THE PANTHER VALLEY                   :
SCHOOL DISTRICT, et al.,                :
                                        :
              Defendants                :

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 22). For the reasons set forth below, the Court will deny Defendants' motion and deny without prejudice qualified immunity to the individual defendants.

### II. Factual Allegations

Plaintiff, John Barna, is an adult resident of Carbon County, Pennsylvania. (Am. Compl., Doc. 2, at ¶ 1). Defendants are the Board of School Directors of the Panther Valley School District and seven former and current individual School Board Members. (*Id.* at ¶¶ 2-9).[1] Plaintiff brings suit seeking damages and injunctive relief against Defendants "due to his removal and banishment from meetings of the School Board in violation of his federal constitutional rights to free speech." (*Id.* at ¶ 12).

---

[1] Those individual School Board Members are: Anthony Pondish, Donna Trimmel, Koreen Nalesnik, Jeffrey Markovich, David Hiles, William Hunsicker, and Anthony Demarco.

Prior to being barred from participating as a citizen in School Board meetings, Plaintiff had "taken considerable interest in the functioning and governance of the Panther Valley School District. This includes, but is not necessarily limited to, attendance at meetings of the School Board of the Panther Valley School District." (*Id.* at ¶ 14).

On April 8, 2010, Plaintiff attended a public School Board meeting wherein he "asked several questions concerning financial dealings of the School Board. Mr. Barna indicated that some of his friends similarly had concerns about financial dealings of the School Board." (*Id.* at ¶¶ 15-16). In response to Plaintiff's comments, Defendant Markovich "invited [Plaintiff] to bring his friends to a subsequent School Board meeting," to which Plaintiff replied that his friends "'carry guns, you wouldn't want that.' Various members of the School Board responded with laughter to this quip. Mr. Markovich responded that 'Aah well, I'll wear my bullet-proof vest.'" (*Id.* at ¶ 17).

Two weeks later, Plaintiff attended another public School Board meeting. At the inception of the meeting, Defendant Markovich "requested that Mr. Barna leave the meeting purportedly based upon the above-referenced comments of Mr. Barna at the April 5, 2010 School Board Meeting" because Plaintiff's "comments '. . . could have been taken as a threat, and until it can be clarified, I have to ask Mr. Barna to leave.'" (*Id.* at ¶¶ 18-19). Plaintiff stated "that he had been joking," but Defendant Markovich "ultimately asked that Mr. Barna be removed from the meeting by a security guard." (*Id.* at ¶ 20).

> As he was leaving, Mr. Barna, in response to commentary from audience members in attendance at the April 22, 2010 School Board Meeting, jokingly

2

stated to the audience to the effect that he might come after all of them. Mr. Markovich utilized this statement to the audience as pretense to claim a "threat" to the School Board.

(*Id.*). Five days later, Plaintiff "received a letter from School District Superintendent Rosemary Porembo, on behalf of the School Board," (*id.* at ¶ 21), "warning" him that his "disorderly conduct and making threats will not be permitted to continue." (Apr. 27, 2010 Letter, Doc. 13, Ex. 1). The letter further stated that "should you appear at another public Board meeting at Panther Valley School District and threaten any Board member or Administrator, or become disorderly in any fashion, you will be barred from further attendance at public Board meetings of the Panther Valley School District." (*Id.*).

Plaintiff continued attending public School Board meetings "between April 2010 and September 2010," but on October 21, 2011, he "received a letter from [the] School District Solicitor . . . on behalf of the School Board, barring Mr. Barna from School District property, effectively barring him from attendance at School Board meetings." (Am. Compl. at ¶ 22). This letter stated that Plaintiff's "conduct ha[d] become intolerable, threatening, and obnoxious," and was "interfering with the function of the School Board and the School District as a whole." (Oct. 18, 2011 Letter, Doc. 13, Ex. 2). As such, Plaintiff was "no longer permitted on any Panther Valley School District property." (*Id.*). It promised that "[s]hould you be found on any Panther Valley School District property," he would "be prosecuted to the fullest extent of the law." (*Id.*). Despite banning Plaintiff from attending future public School Board meetings, the letter indicated that "[i]n the event that you should have

3

reasonable and responsible questions for the School Board or the School District administration, you are to submit them in writing to the Superintendent and she will see that you are provided with an appropriate reply in a timely fashion." (*Id.*).

Following the October 18, 2011 Letter, the School Board voted to "ratify and approve the ban of Mr. John Barna from Panther Valley School District property in accordance with Panther Valley School District policy No. 903, No. 904 and No. 907." (Nov. 7, 2011 School Board Minutes, Doc. 13, Ex. 3). The School Board members voted 6-2, with one abstention, in favor of ratifying and approving the ban.[2] (*Id.*).

This Court has jurisdiction under 28 U.S.C. § 1331, and venue is proper 28 U.S.C. § 1391(b).

### III. Motion to Dismiss

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "[A] motion for judgment on the pleadings based on the theory that the plaintiff failed to state a claim is reviewed under the same standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 146-47 (3d Cir. 2013).

To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a plaintiff must state a "'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)

---

[2] Those voting in favor were Defendants Pondish, Trimmel, DeMarco, Hiles, Hunsicker, and Markovich. Those voting against were Angst and Genther, who have not been named as defendants in this case. Defendant Nalesnik abstained from voting.

4

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)). FED. R. CIV. P. 8(a)(2) requires only that a pleading contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).

"The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). In addition, "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." *In re New Jersey Title Ins. Litigation*, 683 F.3d 451, 462 (3d Cir. 2012). "The Rule 15(a) factors include undue delay, bad faith, prejudice, or futility." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 230-31 (3d Cir. 2011) (internal citation and quotation marks omitted).

## IV. Analysis

### Restrictions on First Amendment Right to Free Speech

To establish a *prima facie* case under 42 U.S.C. § 1983, plaintiffs must demonstrate that: (1) they were deprived of a federal right; and (2) the person who deprived them of that right acted under color of state law. *Burrella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007). Section 1983 is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004).

5

The First Amendment to the Constitution provides, in relevant part, "Congress shall make no law . . . abridging the freedom of speech, . . . " U.S. CONST., amend. I. Although the First Amendment prohibits the government from "abridging the freedom of speech," it does not preclude the government from placing any restrictions at all on speech. There are four types of public forums that a government may establish, and the type of forum will determine the extent of permissible restrictions on speech in that forum.

First, "quintessential public forums" are "places which by long tradition or by government fiat have been devoted to assembly and debate," such as "public streets and parks which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469, 129 S. Ct. 1125, 1132, 172 L. Ed. 2d 853 (2009) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983)). "Reasonable time, place, and manner restrictions are allowed, but any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest." *Id.* (internal citations omitted).

Second, "a government entity may create 'a designated public forum' if government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose." *Pleasant Grove*, 555 U.S. at 469, 129 S. Ct. at 1132 (citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 806, 105 S. Ct. 3439, 87 L. Ed. 2d

6

567 (1985)). "Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum." *Id.* at 469-70.

Third, "a government entity may create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects. In such a forum, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral." *Id.* In a limited public forum, "[t]he State may be justified in reserving its forum for certain groups or for the discussion of certain topics." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S. Ct. 2093, 2100, 150 L. Ed. 2d 151 (2001) (internal citations and quotation marks omitted). "The State's power to restrict speech, however, is not without limits. The restriction must not discriminate against speech on the basis of viewpoint, and the restriction must be reasonable in light of the purpose served by the forum." *Id.* at 106-07.[3]

Fourth, the government may place limitations on non-public forums: "[i]n addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 46, 103 S. Ct. at 955.

---

[3] *But see Galena v. Leone*, 638 F.3d 186, 197, n.8 (3d Cir. 2011) ("There appears to be some inconsistency in federal courts' opinions, even those of the Supreme Court, as to whether a limited public forum is a separate category or a subset of a designated public forum with a third category of forums being 'nonpublic forums'.") (listing cases); *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004) ("The Supreme Court has not precisely instructed where the limited public forum is located on the First Amendment spectrum between the strict test for public forum regulation and the more relaxed test for nonpublic regulation.").

"[I]n a public forum any restrictions as to time, place, and manner of speech (1) must be unrelated to content; (2) must be narrowly tailored to serve a significant governmental interest; and (3) must allow alternative ways of communicating the same information." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004) (internal citations and quotation marks omitted). In a recent case, the Third Circuit clarified that:

> If even only one member of the public objects during a time when public comments are not allowed[,] the Council's procedure in conducting business is affected even if the member of the public interrupts the meeting in a conversational, nonthreatening tone of voice. The interruption of the order of business is itself the disturbance.

*Galena v. Leone*, 638 F.3d 186, 212 (3d Cir. 2011) (rejecting Galena's claims "that he was not creating a disturbance, at least as that term is ordinarily understood, by objecting to the Council's procedures."). Therefore, Defendants' arguments that Barna was "intolerable, threatening, and obnoxious," on a number of occasions, could justify placing reasonable time, place, and manner restrictions on Barna's speech at Panther Valley School Board meetings.

In fact, in *Eichenlaub*, the Third Circuit noted the following:

> The record of the September 14, 1999 meeting discloses that [Eichenlaub] was repetitive and truculent, and that he repeatedly interrupted the chairman of the meeting. Restricting such behavior is the sort of time, place, and manner regulation that passes muster under the most stringent scrutiny for a public forum. Indeed, for the presiding officer of a public meeting to allow a speaker to try to hijack the proceedings, or to filibuster them, would impinge on the First Amendment rights of other would-be participants. We have no difficulty sustaining the decision to remove David Eichenlaub on that basis.

8

385 F.3d at 281 (affirming the district court's grant of summary judgment in favor of the Township Board of Supervisors on Plaintiffs' First Amendment speech claim). "At any rate, the overwhelming, and wholly sufficient, motive to eject David Eichenlaub from the meeting was the perfectly sustainable and content-neutral desire to prevent his badgering, constant interruptions, and disregard for the rules of decorum." *Id.* [4]

Nevertheless, the Court finds that it is not appropriate at this stage of the case to grant Defendants' motion. In support of their Motion for Judgment on the Pleadings, Defendants argue that "[i]t was not until a meeting held on October 14, 2011, that Plaintiff became the most unruly any Board members had ever seen. Following several outbursts, Plaintiff was asked to leave the meeting." (Defs.' Br. in Supp., Doc. 23, at 3). Leaving aside for the moment the fact that this argument was made in a brief – which is not a pleading – and none of the exhibits submitted by Defendant refer specifically to any unruly behavior or outbursts occurring on October 14, 2011,[5] Plaintiff is entitled to develop a fuller factual record in support of his claim. *See Mobley v. Tarlini*, 641 F. Supp. 2d 430, 440 (E.D. Pa. 2009) ("In the instant case, taking Plaintiff's allegations as true, the Court must deny

---

[4] Furthermore, in a non-precedential case, the Third Circuit continued its approval of reasonable time, place, and manner restrictions in these types of situations: Olasz, a member of the West Mifflin Borough Council, sued Welsh, the council president, for (1) ruling that Olasz was out of order for being disruptive and addressing items not on the agenda, and (2) instructing the police to remove him from two council meetings. *Olasz v. Welsh*, 301 F. App'x 142 (3d Cir. 2008) (affirming the district court's grant of summary judgment in favor of Welsh). "Olasz admitted to speaking out at the Borough Council meetings, and in fact 'speak[ing] loudly while being gaveled' by Welsh, but he averred that his behavior was necessary in order to be heard." *Id.* at 143. The Third Circuit found that "Welsh's actions served the function of adhering to rules of decorum and confining the discussion to the purpose of the meeting, and that restricting Olasz's disruptive behavior constitutes the type of time, place, and manner regulation that survives even the most stringent scrutiny for a public forum." *Id.* at 146.

[5] These reasons alone would be sufficient to deny Defendants' motion, but the Court will provide the following guidance to the parties for future motions practice.

Defendant's 12(c) motion in order to allow factual development of whether Defendant engaged in viewpoint-based discrimination or acted out of hostility or political opposition to Plaintiff.").

As stated above, "in a public forum any restrictions as to time, place, and manner of speech (1) must be unrelated to content; (2) must be narrowly tailored to serve a significant governmental interest; and (3) must allow alternative ways of communicating the same information." *Eichenlaub*, 385 F.3d at 280.

As to the first prong, a disturbance may very well have been the reason for removing Barna, but Barna should be given an opportunity to show that the true motive for silencing him was the content of his speech. *See Mobley*, 641 F.Supp.2d at 441 ("Although Defendant claims that she was merely applying Robert's Rules in silencing Plaintiff and that no other members tried to violate the Rules as Plaintiff did—and the videotape appears to corroborate this statement—the Court cannot determine at this stage in the litigation that . . . viewpoint-based discrimination did not exist."); *see also Wilkinson v. Bensalem Twp.*, 822 F. Supp. 1154, 1156, 1159 (E.D. Pa. 1993) (denying a motion for summary judgment because the record contained evidence that certain council members told the council president "[d]on't let [the plaintiff] talk," the plaintiff was not permitted to speak until after the public portion of the meeting was over and after council completed executive session, and the council president "would not permit Wilkinson to speak during the public portion of the

meeting, unless he apologized for his past behavior, even though Wilkinson had complied with all of the requirements necessary to participate.").

As to the second prong, there is a serious and substantial question in the undersigned's mind as to whether a permanent ban on Plaintiff's attendance at all future Panther Valley School Board meetings *and* Panther Valley school property was "narrowly tailored" to serve the undoubtedly compelling government interest in assuring the safety of other citizens in attendance at School Board meetings and on school property.

Finally, as to the third prong, while Defendants claim that there were ample alternative means of communication available to Barna, the evidence thus far is not entirely consistent with their arguments. Defendants argue that "Plaintiff still has 'ample alternative channels' through which he can communicate with the Board, including but not limited to writing letters, making phone calls, etc." (Doc. 23, at 9). However, the letter informing Plaintiff that he was banned from attending future School Board meetings and from school property indicated that "[i]n the event that you should have reasonable and responsible questions for the School Board or the School District administration, you are to submit them in writing to the Superintendent and she will see that you are provided with an appropriate reply in a timely fashion." (Oct. 18, 2011 Letter). Construing all the allegations and evidence in Plaintiff's favor, Plaintiff may have believed that he was not permitted to have any other means of communicating his questions, opinions, or concerns other than by writing to the Superintendent. *See Galena*, 638 F.3d at 203 ("*as a substantive matter, it is clear from the*

11

*record* that there were adequate alternative means for Galena to communicate his objection to the Council's procedure in adopting ordinances."). Therefore, the Court will deny Defendants' Motion for Judgment on the Pleadings (Doc. 22) at this time.

## Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, -- U.S. --, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (internal citations omitted). "[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* The doctrine "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, -- U.S. --, 132 S. Ct. 1235, 1244-45, 182 L. Ed. 2d 47 (2012).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985). The Supreme Court has indicated that, preferably, the issue of qualified immunity "ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). However, the Third Circuit has recognized that this preference sometimes must give way to the realities of a case's development. In response to *Hunter*, the Third Circuit said:

12

> That is well and good when there are no factual issues in a case, but often the facts are intensely disputed, and our precedent makes clear that such disputes must be resolved by a jury after a trial. As a practical matter, then, in such cases the immunity becomes no more than a mere defense, and a sometimes challenging one to establish at that.

*Curley v. Klem*, 499 F.3d 199, 208 (3d Cir. 2007) (internal citations omitted). Thus, though this Court also would prefer to resolve the issue of qualified immunity "long before trial," it cannot do so because of the factual issues remaining in the case, namely: (1) whether Defendant was barred because he was disruptive or whether it was an attempt to silence the content of his speech, (2) whether permanently banning Plaintiff from future School Board meetings and from school property was narrowly tailored, and (3) whether Plaintiff had alternative means of communicating his speech. These factual questions prevent the court from determining whether "the official violated a statutory or constitutional right" that was "clearly established at the time of the challenged conduct." *See al-Kidd*, 131 S. Ct. at 2080.

Some courts have held that in circumstances similar to those in this case, "the boundaries of the First Amendment right . . . were well established for purposes of qualified immunity." *Wilkinson*, 822 F. Supp. at 1158 ("In cases factually similar to the one before us, courts have consistently recognized that local officials presiding over duly-called public meetings may offend First Amendment rights when they make *ad hoc* parliamentary rulings."). Others have granted qualified immunity based on the unique circumstances of the case. *See Zapach v. Dismuke*, 134 F. Supp. 2d 682, 694-95 (E.D. Pa. 2001) (granting the

defendant qualified immunity, in part, because "the public was clearly notified that their comments had to be relevant to whether or not the special exception at issue should be granted. Under clearly established law, the official conducting a public meeting has the right to stop any speaker whose speech became irrelevant, as a valid content-neutral restriction." Furthermore, the defendant "allowed Plaintiff to continue speaking even though his speech had become irrelevant to the matter at issue, in the hope that Plaintiff would return to the topic.").

Nevertheless, both *Wilkinson* and *Zapach* decided the qualified immunity issue on motions for summary judgment. Thus, at this time, the Court will deny qualified immunity to Defendants without prejudice.

## V. Conclusion

For the foregoing reasons, the Court will deny Defendants' Motion for Judgment on the Pleadings (Doc. 22) and deny without prejudice qualified immunity to the individual defendants. A separate Order follows.

Robert D. Mariani
United States District Judge