**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3904
_____

JOHN BARNA,
Appellant

v.

BOARD OF SCHOOL DIRECTORS OF THE
PANTHER VALLEY SCHOOL DISTRICT,
also known as Panther Valley Board of Education;
ANTHONY PONDISH; KOREEN NALESNIK; JEFFREY
MARKOVICH; DAVID HILES; WILLIAM HUNSICKER;
ANTHONY DEMARCO; DONNA TRIMMEL
_____

Appeal from the United States District Court for the
Middle District of Pennsylvania
(D.C. Civil Action No.  3-12–cv–00638)
District Judge:  Honorable Robert D. Mariani
_____

Argued:  September 14, 2016

Before:  CHAGARES, GREENAWAY, JR., and
RESTREPO, <u>Circuit Judges</u>
_____

(Opinion Filed: December 7, 2017)

Gary D. Marchalk, Esq.
Law Offices of Gary D. Marchalk, LLC
204 East Broad Street
Tamaqua, PA 18252

Jonathan P. Phillips, Esq. **[ARGUED]**
606 Country Hill Road
Orwigsburg, PA 17961

      Counsel for Appellant

Thomas A. Specht, Esq. **[ARGUED]**
Marshall Dennehey Warner Coleman & Goggin
P.O. Box 3118
Scranton, PA 18505

      Counsel for Appellees

_____

OPINION
_____

CHAGARES, <u>Circuit Judge</u>.

Plaintiff John Barna filed a lawsuit under 42 U.S.C. § 1983 alleging that the Panther Valley School Board ("School Board" or "Board") and several of its officials violated his First Amendment rights by categorically banning him from

attending Board meetings after he was threatening and disruptive on several occasions. The Board and the individual officials moved for summary judgment. The District Court granted the motion, holding that although the Board's ban violated Barna's constitutional rights, qualified immunity shielded both the Board and the officials from liability for damages. For the reasons set forth below, we will affirm in part, vacate in part, and remand for further proceedings.

## I.

The relevant facts are not in dispute. Barna attended a School Board meeting on April 8, 2010, at which he expressed concern about a particular school district contract. Barna mentioned that he and his friends were confused by the contract, which they perceived as a waste of public resources. School Board President Jeffrey Markovich responded by suggesting that Barna bring his friends to the next meeting. Barna replied: "You wouldn't like that. Some of my friends have guns." Joint Appendix ("J.A.") 129. Barna asserted at his deposition that this remark was a joke. J.A. 129.

The Board held another meeting on April 22, 2010. Before the meeting began, Markovich told Barna: "Since you say that you have friends with guns, I'm going to have to ask you to leave." J.A. 130. Markovich reiterated a similar message once the meeting began. While exiting the meeting, Barna stated: "Don't laugh. I may have to come after all of yous." J.A. 130. Some meeting attendees construed the remark as a threat.

Barna alleges that after leaving the meeting room, David Hiles, a Board member standing in the hallway, made

3

threatening gestures toward him. A security guard restrained Barna as he attempted to follow Hiles. Barna then returned to the Board room and stated that Hiles "just threatened [his] life." J.A. 131.

On April 27, 2010, Rosemary Porembo, the school district superintendent, informed Barna by letter that he could attend Board meetings but would be banned from future attendance if he engaged in any threatening or disorderly conduct. Barna subsequently attended several Board meetings without incident.

Barna attended another Board meeting on October 12, 2011. Barna raised his voice and became confrontational after being denied the opportunity to ask questions. Markovich stood up at some point, which Barna apparently interpreted as an invitation to fight. Barna stated: "Do you want to fight? Let's go." J.A. 133. Barna admitted that during the meeting he "blew [his] top" and was "just mad." J.A. 133.

The Board convened again the next day, at which point Barna apologized for his conduct to some, but not all, of the Board members. During a brief recess at the meeting, Barna uttered "[s]on of a bitch" within earshot of meeting attendees, including some children. J.A. 135.

On October 18, 2011, the Board solicitor, Robert Yurchak, sent Barna a letter barring him from attending all Board meetings or school extracurricular activities because his conduct had become "intolerable, threatening and obnoxious" and because he was "interfering with the function of the School Board." J.A. 292. Barna was also banned from "be[ing] physically present" on the Panther Valley campus. J.A. 292.

Barna was, however, permitted to submit "reasonable and responsible" written questions to the Board, which would be answered in a timely manner.  J.A. 292.  A Board member testified that he did not believe that there was any other way of "correct[ing] the problems that the Board had with Mr. Barna." J.A. 249.

Barna did not write to the Board with any questions or comments after receiving the letter, although he did request and obtain audiotapes of Board meetings.  J.A. 136.  When asked why he had made no additional requests, Barna testified that he "gave up" because he was no longer permitted to attend Board meetings.  J.A. 136.

Barna filed this suit on April 5, 2012, and filed an amended complaint the following day, naming as defendants the School Board and individual Board officials Anthony Demarco, David Hiles, William Hunsicker, Jeffrey Markovich, Koreen Nalesnik, Anthony Pondish, and Donna Trimmel. Barna alleged violations of his First Amendment right to free speech (Count 1) and violations of his First and Fourteenth Amendment rights to be free from unconstitutional prior restraint (Count 2).

The Board and the officials moved for judgment on the pleadings, and the officials moved for dismissal based on qualified immunity.  The District Court denied these motions on October 15, 2013.  The Board and the individual officials later moved for summary judgment.  The District Court referred the matter to a Magistrate Judge, who recommended granting summary judgment in favor of the defendants.  Barna timely objected.  The District Court ordered supplemental briefing and oral argument.  During oral argument on April 10,

2015, the parties agreed that there were no disputes of material fact. J.A. 9 n.1.  Barna moved for summary judgment on April 28, 2015.  On November 6, 2015, the District Court granted summary judgment in favor of both the Panther Valley School Board and the individual School Board officials.

Barna filed this timely appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review of a District Court's grant or denial of summary judgment is plenary, and we apply the same standard that the District Court applies.  Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).  It is appropriate to grant summary judgment when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## III.

The District Court determined that the Board's categorical ban on Barna's attendance at meetings violated Barna's First Amendment rights.  It nonetheless concluded that all of the defendants were entitled to qualified immunity because the right to participate in School Board meetings despite engaging in a pattern of threatening and disruptive behavior was not "clearly established."  Barna does not take issue with the District Court's finding that the ban was unconstitutional, and we will not address that determination

here.[1]  Barna instead argues that the District Court erred in granting qualified immunity to all of the defendants.  We examine the District Court's conclusion first with respect to the individual Board members and then with respect to the Panther Valley School Board, a municipal entity.

## A.

A plaintiff seeking relief under 42 U.S.C. § 1983 must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury."  Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005).  Section 1983 is not a source of substantive rights but rather "a mechanism to vindicate rights afforded by the Constitution or a federal statute."  Black v. Montgomery Cty., 835 F.3d 358, 364 (3d Cir.), as amended (Sept. 16, 2016), cert. denied sub nom. Pomponio v. Black, 137 S. Ct. 2093 (2017).  A defendant sued under § 1983 is entitled to qualified immunity "unless it is shown that the official violated a statutory or constitutional

---

[1] The School Board and the individual officials, by contrast, dispute that the ban was unconstitutional.  The parties have discussed at length in their briefing whether a cross-appeal on this issue was necessary or even permissible in this case.  We need not reach this question, however, because we have "sound discretion" to decide the immunity question first, thus avoiding the constitutional question of whether a right exists.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009) (permitting courts to determine which of the two prongs of the qualified immunity analysis should be addressed first); see also Camreta v. Greene, 563 U.S. 692, 707 (2011).

right that was 'clearly established' at the time of the challenged conduct." Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). A right is "clearly established" for these purposes when its "contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wilson v. Layne, 526 U.S. 603, 615 (1999) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (observing that courts should ask "whether the state of the law [at the relevant time] . . . gave respondents fair warning that their alleged [conduct] . . . was unconstitutional"). It is not enough that the right is defined at a high level of generality; rather, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742).

In conducting the inquiry into whether a right is clearly established, we look first for "applicable Supreme Court precedent." Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir.), as amended (Mar. 21, 2016). If none exists, we consider whether there is a case of controlling authority in our jurisdiction or a "'robust consensus of cases of persuasive authority' in the Courts of Appeals [that] could clearly establish a right for purposes of qualified immunity." See id. (quoting Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (per curiam)). The authority need not be "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741.

Barna cites to no case of controlling authority from the Supreme Court or our Court supporting his position, and we have found none. To the contrary, we have twice upheld the

temporary removal of a disruptive participant from a limited public forum like a school board meeting.[2]  For instance, in Galena v. Leone, 638 F.3d 186 (3d Cir. 2011), we held that the temporary ejection of a disruptive participant from a municipal meeting did not violate the plaintiff's constitutional rights.  Id. at 213.  Similarly, in Eichenlaub v. Twp. of Indiana, 385 F.3d 274 (3d Cir. 2004), we upheld the constitutionality of removing a speaker from a township meeting to prevent "badgering, constant interruptions, and disregard for the rules of decorum." Id. at 281.[3]  Neither case, however, squarely addresses the

---

[2] First Amendment doctrine recognizes three types of fora:  the traditional public forum, the designated public forum, and the nonpublic forum.  Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998).  We regard a limited public forum as "a subcategory of the designated public forum." Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 225 (3d Cir. 2003).  The parties do not dispute that a school board meeting is a limited public forum.  Barna Br. 23; Board Br. 23.

[3] Our decisions in Galena and Eichenlaub are also in accord with our caselaw holding that there is no categorical right of access to school property.  See Student Coal. for Peace v. Lower Merion Sch. Dist. Bd. of Sch. Dirs., 776 F.2d 431, 437 (3d Cir. 1985) ("The courts have never 'suggested that students, teachers, or anyone else has an absolute constitutional right to use all parts of a school building or its immediate environs for his unlimited expressive purpose.'" (quoting Grayned v. City of Rockford, 408 U.S. 104, 117–18 (1972))). The absence of a clearly established right to access school property further undermines Barna's argument to the extent he

constitutionality of a categorical ban proscribing all future expression in a limited public forum.

Notwithstanding the absence of precedential authority, Barna urges us to recognize that the right to participate in school board meetings despite engaging in a pattern of threatening and disruptive behavior was clearly established based on a handful of district court decisions, only some of which predate the defendants' institution of the ban.  See Brosseau v. Haugen, 543 U.S. 194, 200 n.4 (2004) (observing that decisions "that postdate the conduct in question . . . are of no use in the clearly established inquiry" (citations omitted)). The only appellate-level case on which Barna relies is Huminski v. Corsones, 396 F.3d 53 (2d Cir. 2004), as amended on reh'g (Jan. 18, 2005).

In Huminski, the Court of Appeals for the Second Circuit considered the constitutionality of several trespass notices that categorically excluded a protestor from a courthouse and its parking lot.  The Huminski court held that because the trespass notices "in effect prohibit indefinitely any and all expressive activity in which [the plaintiff] might want to engage," they were "pervasive enough to be viewed as creating a 'First-Amendment-Free Zone.'"  Id. at 92.  The court thus held that the trespass notices unreasonably restricted the protestor's right to free expression under the First Amendment. Id.  The court further concluded that the defendants who issued the notices were not entitled to qualified immunity because it was clearly established that such an absolute prohibition of

challenges the ban based on its absolute prohibition of his presence on the Panther Valley campus.

speech that "singl[ed] out" the plaintiff to the exclusion of all others would be unconstitutional.  Id. at 92–93.

The ban at issue in Huminski is plainly distinguishable from the ban at issue here.  Unlike the notices of trespass in Huminski that completely foreclosed "any and all" protected speech, id. at 92, the Board's ban left open alternative channels for expressive activity, such as permitting Barna to submit "reasonable and responsible" written questions, J.A. 292. Even assuming Huminski is persuasive authority supporting Barna's position, however, it is insufficient to place the "statutory or constitutional question beyond debate."  al-Kidd, 563 U.S. at 741.

Indeed, the court's position in Huminski is at least partially at odds with the positions adopted by other Courts of Appeals.  For instance, in Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999), the Court of Appeals for the Fourth Circuit considered the constitutionality of a ban barring the plaintiff from entering school property.  Id. at 652.  The plaintiff had been progressively disruptive during school board meetings and threatening toward school officials.  Id.  The plaintiff challenged the ban on First and Fourteenth Amendment grounds.  Id. at 653.  The District Court dismissed the case for lack of subject matter jurisdiction, concluding that the plaintiff had failed to state a substantial federal claim.  Id. at 654–55. The Court of Appeals for the Fourth Circuit affirmed, emphasizing that "[t]he right to communicate is not limitless," particularly where the plaintiff has engaged in a "continuing pattern of verbal abuse and threatening behavior towards school officials."  Id. at 656.  The Court thus upheld the ban because the plaintiff's constitutional rights were not "'directly

and sharply' implicated by . . . [the] prohibition against him." Id. (quoting Epperson v. Arkansas, 393 U.S. 97, 104 (1968)).

Barna has not persuasively distinguished Lovern or suggested why its logic does not extend to the qualified immunity analysis here.  To the contrary, Barna "freely concedes that the protection of school staff implicates a significant public interest" and that under Lovern, "school officials [are] invested with discretion to remove parents from school property in response to a threat of disruption."  Barna Br. 23–24.  Indeed, the Lovern court's guidance on the scope of the "right to communicate" on school property could plausibly suggest to a reasonable official that the permanent ban at issue here would pass constitutional muster.  Lovern, 190 F.3d at 656.  Even assuming there is a protected interest in participating in school board meetings despite engaging in a pattern of threatening and disruptive behavior, we cannot fault the individual Board officials for having failed to recognize that right as clearly established, particularly in light of the Lovern decision and the absence of contrary authority from the Supreme Court or our Court.[4]  See al-Kidd, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

---

[4] The Lovern court was concerned principally with whether there is a First Amendment right of access to school property — not, as here, whether there is a First Amendment right to expression at school board meetings.  We nonetheless believe that the two rights are sufficiently similar that officials could have relied on Lovern to conclude that their conduct was constitutionally permissible in these circumstances.

We therefore conclude that, given the state of the law at the time of the Board's ban, there was, at best, disagreement in the Courts of Appeals as to the existence of a clearly established right to participate in school board meetings despite engaging in a pattern of threatening and disruptive behavior.[5]  Even if a "right can be 'clearly established' by circuit precedent despite disagreement in the courts of appeals," Taylor, 135 S. Ct. at 2045, there does not appear to be any such consensus — much less the robust consensus — that we require to deem the right Barna asserts here as clearly established.  Accordingly, we will affirm the District Court's grant of summary judgment in favor of the individual Board members on the basis of qualified immunity.

## B.

We turn to whether summary judgment was properly granted in favor of the Board.  The Supreme Court in Owen v. City of Independence, 445 U.S. 622 (1980), held that municipalities do not enjoy qualified immunity from suit for damages under § 1983.  See id. at 657 ("[M]unicipalities have no immunity from damages liability flowing from their

---

[5]  Two other Courts of Appeals have addressed the constitutionality of a permanent ban of citizens from municipal meetings.  See Reza v. Pearce, 806 F.3d 497, 505 (9th Cir. 2015); Surita v. Hyde, 665 F.3d 860, 871 (7th Cir. 2011). Apart from being non-binding precedent in this jurisdiction, both cases post-date the imposition of the Board's ban and thus again "are of no use in the clearly established inquiry." Brosseau, 543 U.S. at 200 n.4.

constitutional violations."); <u>see also</u> <u>Hynson By & Through Hynson v. City of Chester</u>, 827 F.2d 932, 934 (3d Cir. 1987). The District Court overlooked the Supreme Court's precedent in <u>Owen</u> and improperly awarded qualified immunity to the Board.  In his opening brief to this Court, Barna appealed this ruling generally, but made no arguments specific to the Board entity, did not distinguish among the defendants, and did not cite <u>Owen</u> as controlling authority.  The Board, by contrast, concedes that qualified immunity does not shield municipal entities under <u>Owen</u> but maintains that it is entitled to immunity because Barna failed to preserve the issue by not addressing it before the District Court or in his opening brief to our Court.  The Board argues in the alternative that the record does not support liability under <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978).[6]

We have long recognized, consistent with Federal Rule of Appellate Procedure 28(a) and Third Circuit Local

---

[6] Although not subject to <u>respondeat superior</u> liability, municipalities may be held directly liable under <u>Monell</u> if they adopt a custom or policy that is unconstitutional or that is the "moving force" behind any constitutional violation.  <u>See Monell</u>, 436 U.S. at 694; <u>Thomas v. Cumberland Cty.</u>, 749 F.3d 217, 222 (3d Cir. 2014).  Municipalities can be held liable regardless of whether it was clear at the time of the policy's adoption that such conduct would violate a plaintiff's constitutional rights.  <u>Owen</u>, 445 U.S. at 656–57.  Because liability may be imposed on a municipality separate and apart from the liability imposed on an individual officer, "[t]he precedent in our circuit requires the district court to review the plaintiffs' municipal liability claims independently of the

Appellate Rule 28.1, that an appellant's opening brief must set forth and address each argument the appellant wishes to pursue in an appeal.  See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) ("[A]ppellants are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief."); see also Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (holding that an argument is not preserved "unless a party raises it in its opening brief"); Daggett v. Kimmelman, 811 F.2d 793, 795 n.1 (3d Cir. 1987) (holding that appellants did not preserve an issue "[b]y failing to raise this issue in their original briefs").  To be preserved, all arguments must be supported specifically by "the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  Fed. R. App. P. 28(a)(8)(A).  As a result, we have consistently refused to consider ill-developed arguments or those not properly raised and discussed in the appellate briefing.  See Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 821 n.10 (3d Cir. 2006) (noting that "passing and conclusory statements do not preserve an issue for appeal").  Nor will we reach arguments raised for the first time in a reply brief or at oral argument.  See In re Grand Jury, 635 F.3d 101, 105 n.4 (3d Cir. 2011) (declining to consider argument first raised at oral argument); In re Stone & Webster, Inc., 558 F.3d 234, 246 n.15 (3d Cir. 2009) (same); In re Surrick, 338 F.3d

---

section 1983 claims against the individual . . . officers." Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996); see also Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994) ("A finding of municipal liability does not depend automatically or necessarily on the liability of a police officer.").

224, 237 (3d Cir. 2003) (deeming unpreserved a claim that was omitted from appellant's initial brief and raised for first time in a reply brief).

The rules requiring preservation of issues serve "important judicial interests." Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 416 (3d Cir. 2011) (quoting Webb v. City of Phila., 562 F.3d 256, 263 (3d Cir. 2009)); see also Hormel v. Helvering, 312 U.S. 552, 558 (1941) (recognizing the "desirability and existence of a general practice under which appellate courts confine themselves to the issues raised below"). The rules promote finality by encouraging parties to advance all relevant arguments and by binding counsel to their strategic choices. See Wheatley v. Wicomico Cty., 390 F.3d 328, 334–35 (4th Cir. 2004); Sigmon Fuel Co. v. Tenn. Valley Auth., 754 F.2d 162, 164 (6th Cir. 1985). Accordingly, once parties choose their arguments, they may only pursue those arguments. See Fleishman v. Cont'l Cas. Co., 698 F.3d 598, 608 (7th Cir. 2012) (recognizing that the rules "prevent parties from getting two bites at the apple").

The preservation rules also protect litigants from unfair surprise. Webb, 562 F.3d at 263. Additionally, preservation rules promote judicial efficiency and conservation of judicial resources by respecting the work of the court of first instance. Wood v. Milyard, 566 U.S. 463, 473 (2012) (admonishing reviewing courts "not [to] overlook" the "processes and time investment" of the court of first instance). This prevents those courts expending time to consider and resolve arguments advanced by counsel only to be "reversed on grounds that were never urged or argued" before trial courts. Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 680 (3d Cir. 1980).

The effect of failing to preserve an argument will depend upon whether the argument has been forfeited or waived.  The Supreme Court has observed that "[t]he terms waiver and forfeiture — though often used interchangeably by jurists and litigants — are not synonymous."  Hamer v. Neighborhood Hous. Servs. of Chicago, No. 16-658, 2017 WL 5160782, at *3 n.1 (U.S. Nov. 8, 2017).  "Waiver is different from forfeiture," United States v. Olano, 507 U.S. 725, 733 (1993), and the distinction can carry great significance.[7]  See Paycom Payroll, LLC v. Richison, 758 F.3d 1198, 1203 (10th Cir. 2014) ("Waiver is accomplished by intent, but forfeiture comes about through neglect." (quoting United States v. Zubia–Torres, 550 F.3d 1202, 1205 (10th Cir. 2008))).  "[F]orfeiture is the failure to make the timely assertion of a right," an example of which is an inadvertent failure to raise an argument.  Olano, 507 U.S. at 733.  Waiver, in contrast, "is the 'intentional relinquishment or abandonment of a known right.'"  Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).  The Supreme Court has deemed an argument waived, for example, when a party "twice informed the U.S. District

---

[7] Waived claims may not be resurrected on appeal.  See Wood, 566 U.S. at 471 n.5 (distinguishing waivers and forfeitures and observing that "a federal court has the authority to resurrect only forfeited defenses"); United States v. Jimenez, 512 F.3d 1, 7 (1st Cir. 2007) ("A waiver is unlike a forfeiture, for the consequence of a waiver is that the objection is unreviewable."); Gov't of Virgin Islands v. Rosa, 399 F.3d 283, 290 (3d Cir. 2005); see also United States v. Lockett, 406 F.3d 207, 213 (3d Cir. 2005) ("The waiver of an appeal will not be invalidated merely because unanticipated events occur in the future.").  The effect of a forfeiture is discussed infra.

Court that it [would] not challenge, but [is] not conceding, the timeliness of [the action]." Wood, 566 U.S. at 465 (third alteration added) (internal quotation marks omitted); United States v. Cooper, 243 F.3d 411, 416 (7th Cir. 2001) ("We have found waiver where either a defendant or his attorney expressly declined to press a right . . . .").

Because of the important interests underlying the preservation doctrine, we will not reach a forfeited issue in civil cases absent truly "exceptional circumstances." Brown v. Philip Morris Inc., 250 F.3d 789, 799 (3d Cir. 2001). Such "circumstances have been recognized when the public interest requires that the issue[s] be heard or when a manifest injustice would result from the failure to consider the new issue[s]." United States v. Anthony Dell'Aquila, Enters. & Subsidiaries, 150 F.3d 329, 335 (3d Cir. 1998) (alterations in original) (quoting Altman v. Altman, 653 F.2d 755, 758 (3d Cir. 1981)) (internal quotation marks omitted); see Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 116 (3d Cir. 1992); see also Flynn v. Comm'r, 269 F.3d 1064, 1068–69 (D.C. Cir. 2001) (noting that "exceptional circumstances" may exist where the case involves "uncertainty in the law; novel, important, and recurring questions of federal law; intervening change in the law; and extraordinary situations with the potential for miscarriages of justice"). Departure from the established preservation rule is a "narrow exception" to the general bar on such review, Syverson v. U.S. Dep't of Agric., 601 F.3d 793, 803 (8th Cir. 2010), and so we will depart only in very "limited" circumstances, Webb, 562 F.3d at 263. See also Tri-M Grp., 638 F.3d at 434 (Hardiman, J., concurring) (noting that "truly exceptional circumstances" must exist before we will reach an unpreserved issue); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1115 (3d Cir. 1993) (recognizing

that the issues that merit review despite failure to preserve fall into an "extraordinary category" of cases).

Although our narrow exceptional circumstances rule applies to all forfeited issues, we have been slightly less reluctant to bar consideration of a forfeited pure question of law. See Hormel, 312 U.S. at 557. We have thus observed that we will reach "a pure question of law even if not raised below where refusal to reach the issue would result in a miscarriage of justice or where the issue's resolution is of public importance." Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005) (quoting Loretangeli v. Critelli, 853 F.2d 186, 189–90 n.5 (3d Cir. 1988)); see also Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 835 (3d Cir. 2011) (addressing a "purely legal question" despite the appellant's failure to preserve the issue); City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 140 (2d Cir. 2011) (excusing a forfeiture when the issue was "purely legal" and the default results from inadvertence); Council of Alt. Political Parties v. Hooks, 179 F.3d 64, 69 (3d Cir. 1999) (reaching for the "first time on appeal" an issue that "concerns a pure question of law"); cf. N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp., 760 F.3d 297, 305 (3d Cir. 2014) ("It is appropriate for us to reach an issue that the district court did not if 'the issues provide purely legal questions, upon which an appellate court exercises plenary review.'" (quoting Hudson United Bank v. LiTenda Mortg. Corp., 142 F.3d 151, 159 (3d Cir. 1998))).

With these principles in mind, we first ask whether the issue of the Board's immunity is properly preserved, and if not, whether that failure to preserve constitutes a forfeiture or a waiver. Barna argues here that he adequately preserved the issue of the Board's entitlement to immunity because in both

his District Court and appellate briefing, he cited to cases which themselves reference the Supreme Court's decision in <u>Owen</u>.  Barna Reply Br. 4.  Such implicit references to the <u>Owen</u> decision do not suffice under Federal Rule of Appellate Procedure Rule 28(a) and our Rule 28.1, which require briefs to contain statements of all issues presented for appeal, together with supporting arguments and citations.  <u>See</u> <u>Kost</u>, 1 F.3d at 182.  Although Barna broadly challenged the District Court's grant of qualified immunity, he did not differentiate among the defendants.  We do not regard such cursory treatment as sufficient to bring the issue of the Board's lack of entitlement to immunity before our Court on appeal.  <u>See</u> <u>In re Surrick</u>, 338 F.3d at 237.  That Barna addressed the <u>Owen</u> decision solely in his reply brief also does not redeem his failure to do so in his opening brief.  <u>Laborers' Int'l Union</u>, 26 F.3d at 398.  We therefore conclude that Barna failed to preserve the issue of the Board's immunity by not addressing it at any level beyond mere generalities.

We next must determine whether Barna's failure constitutes a waiver or forfeiture.  The Board characterizes Barna's failure to raise the <u>Owen</u> issue as a waiver.  Board Br. 42–43.  Barna's failures to raise the <u>Owen</u> issue in the District Court as well as in his opening brief to our Court, however, appear to have been inadvertent omissions.  Under the framework described above, they are therefore more properly characterized as forfeitures rather than as waivers.  <u>See</u> <u>Olano</u>, 507 U.S. at 733.  We accordingly must consider whether there are truly exceptional circumstances to excuse this forfeiture.

Turning to that inquiry, we believe that the circumstances of this case compel our review here.  The District Court's legally incorrect holding granting "judgment in favor of the Defendants on the basis of qualified immunity,"

J.A. 51, directly contravenes the Supreme Court's holding in Owen. The availability of qualified immunity for a municipal entity is thus precisely the type of "pure question of law" that commands our attention. Tri-M Grp., 638 F.3d at 418; Bagot, 398 F.3d at 256 (deciding the merits of a forfeited claim where "the proper resolution of the legal question, though not exactly simple, [wa]s reasonably certain"). Holding otherwise would problematically permit the District Court's pure legal error to stand uncorrected. See Wheeler v. City of Pleasant Grove, 664 F.2d 99, 101 (5th Cir. 1981) (reversing the district court's award of qualified immunity to a municipality as an erroneous "conclusion of law" and remanding for consideration in light of Owen).

Moreover, reaching the Owen issue here would not implicate the prudential concerns underlying the forfeiture doctrine. Huber v. Taylor, 469 F.3d 67, 75 (3d Cir. 2006). The Board, which itself raised the Owen issue, would not be unfairly surprised by judicial consideration of the issue. See Barefoot Architect, 632 F.3d at 835. To the contrary, the parties discussed the matter at oral argument and subsequently provided supplemental briefing on it. Moreover, the Supreme Court's decision in Owen is long-standing authority that has been repeatedly cited in our precedents on qualified immunity. See, e.g., Kelly, 622 F.3d at 263; Grant v. City of Pittsburgh, 98 F.3d 116, 126 n.7 (3d Cir. 1996); Carver v. Foerster, 102 F.3d 96, 102 (3d Cir. 1996). We therefore do not believe that the Board would be unduly surprised by our consideration of the issue in this context.

Considering Owen here is also in accord with the approach adopted by our sister circuit Courts of Appeals, which have reached the issue notwithstanding the appellant's failure to preserve the issue. For instance, in Hedge v. County

of Tippecanoe, 890 F.2d 4 (7th Cir. 1989), the appellant failed to raise the Owen issue before the district court.[8]  The Court of Appeals for the Seventh Circuit held that the "fail[ure] to bring th[e] case to the attention of the trial judge" did not prevent appellate consideration of the issue.  Id. at 8.  The Hedge court concluded, inter alia, that because the Supreme Court's decision in Owen "prohibits a governmental body, as a matter of law, from asserting the defense of qualified immunity," that case precluded the entry of summary judgment in favor of the municipal entity notwithstanding the appellant's failure to preserve the issue.  Id.  The decision in Hedge is persuasive authority suggesting that the Board should not be permitted to utilize a defense to which it is not legally entitled.

Several of our sister Courts of Appeals have similarly reversed a district court's qualified immunity ruling where, regardless of the preservation posture, the district court erred in overlooking the Owen issue.  For instance in Sample v. City of Woodbury, 836 F.3d 913 (8th Cir. 2016), the Court of Appeals for the Eighth Circuit remanded for consideration of the municipality's liability where the District Court "did not distinguish the claims" against the individual officials and the municipality.[9]  The Sample court aptly noted that it could not

---

[8] The Court of Appeals for the Seventh Circuit characterized the appellant's failure to raise the Owen issue as a "waiver." Hedge, 890 F.2d at 8.  In light of the discussion herein, we believe it is more aptly characterized as a forfeiture.

[9] The decision in Sample concerned the District Court's legally incorrect award of absolute immunity to the municipality.  Its holding nevertheless applies with equal force with respect to an award of qualified immunity.  See Leatherman v. Tarrant

simply "ignore [the] reasoning in <u>Owen</u>."  <u>Id.</u> at 917.  The
Court of Appeals for the Second Circuit adopted a similar
position in <u>Askins v. Doe No. 1</u>, 727 F.3d 248 (2d Cir. 2013),
where it too confronted a failure to distinguish the individual
defendants from the municipal defendant.  <u>See id.</u> at 254 ("To
rule, as the district court did, that the City of New York escapes
liability for the tortious conduct of its police officers because
the individual officers are entitled to qualified immunity would
effectively extend the defense of qualified immunity to
municipalities, contravening the Supreme Court's holding in
<u>Owen</u>.").  These cases persuasively suggest that the public
interest would be better served by addressing the <u>Owen</u> issue
than by ignoring it.[10]

      For all of these reasons, we conclude that there are
exceptional circumstances permitting review of the otherwise
forfeited issue of the Board's entitlement to immunity.
Because the District Court erred in awarding qualified
immunity to the Board, we will vacate with respect to the grant
of summary judgment in the Board's favor.  We take no
position on the viability of the claims against the Board,

---

<u>Cty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163,
166 (1993) (observing that it is "quite clear that, unlike various
government officials, municipalities do not enjoy immunity
from suit — either absolute or qualified — under § 1983.").

[10] Although forfeiture of the <u>Owen</u> issue was not discussed in
detail in either <u>Sample</u> or <u>Askins</u>, we regard both cases as
persuasive authority indicating that not distinguishing the
individual defendants from the municipal defendant pursuant
to <u>Owen</u> is the type of pure legal error requiring remand.

including whether Barna has even stated a claim under <u>Monell</u>, leaving that determination to the District Court. We will accordingly vacate and remand so that the District Court may consider the Board's liability in the first instance.[11]

IV.

For the foregoing reasons, we will affirm the District Court's entry of summary judgment in favor of the individual officials of the Panther Valley School Board in their individual capacities. We will vacate the District Court's order granting summary judgment to the Panther Valley School Board and the individual officials in their official capacities and will remand for proceedings consistent with this opinion.

---

[11] Our analysis as to the Board applies to the individual officials, as sued in their official capacities only. <u>See</u> <u>Santos v. Frederick Cty. Bd. of Comm'rs</u>, 725 F.3d 451, 470 (4th Cir. 2013); <u>Lore v. City of Syracuse</u>, 670 F.3d 127, 164 (2d Cir. 2012). Therefore, we will also vacate the District Court's order granting summary judgment to the individual officials, as sued in their official capacities.